**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
)
DEVIN BRIAN HOWELL                            )
                                              )
                       Plaintiff,             )
                                              )
          v.                                  )          Civil Action No. 11-01177 (ABJ)
                                              )
VINCENT GRAY, Mayor of the                    )
District of Columbia, *et al.*,               )
                                              )
                       Defendants.            )
_____ )


**<u>MEMORANDUM OPINION</u>**

Plaintiff Devin Brian Howell brings this action against the District of Columbia ("D.C.,"

"District"), Vincent Gray in his official capacity as the Mayor of D.C., Laura Nuss in her official

capacity as the Director of the D.C. Department on Disability Services, and Irvin Nathan in his

official capacity as the Attorney General for D.C.  Plaintiff's complaint [Dkt. # 3] alleges that

defendants acted negligently and in violation of federal law by failing to provide plaintiff with

vocational rehabilitation funding and services pursuant to D.C. Code Section 7-761.01 *et seq.*

and its accompanying regulations, 29 D.C.M.R. § 100 *et seq.*  Defendants have moved to dismiss

plaintiff's claims in full, or, in the alternative, for summary judgment, for lack of subject matter

jurisdiction, failure to state a claim, and improper defendants [Dkt. # 4].

In addition, Mr. Howell seeks to amend his complaint to substitute claims alleging that

the denial of his past benefits resulted from the District's systematic failure to train, supervise,

investigate, and review counselors [Dkt. # 13].

Because the Court finds that plaintiff's proposed amendments would be futile, it will

deny plaintiff's motion to amend.  The Court will also grant defendants' motion to dismiss the

original complaint for failure to state a claim, without reaching the issues of subject matter jurisdiction or improper defendants.

I.     **Background**

A.  **Factual Background in Original Complaint**

Plaintiff Devin Brian Howell is a resident of the District of Columbia.  Compl. ¶ 8.  He alleges that his diagnosed learning disabilities qualify him for vocational rehabilitation benefits and services from the District.  *Id.* ¶ 19.  Mr. Howell attended Kingsbury Day School, an elementary and high school for students with learning disabilities.  *Id.* ¶¶ 13–14.  His education was funded by D.C. Public Schools ("DCPS"), pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et. seq*.  Compl. ¶¶ 13–14.  Mr. Howell alleges that upon graduation, the D.C. Rehabilitation Services Administration ("RSA") informed some special education Kingsbury graduates of their rights to further benefits, but failed to inform Mr. Howell that he was also eligible for these benefits.   Compl. ¶ 15.  As a result, Mr. Howell attended Montgomery Community College for three years without the benefits to which he was allegedly entitled.  Pl.'s Resp. to Def.'s Mot. to Dismiss at 2–3.

Mr. Howell's complaint alleges that he first learned that he might be eligible for vocational benefits and services, and contacted the RSA in March 2011 – after having completed his three years of community college.  Compl. ¶ 16.  He claims that after he sent all the requested documentation to prove his qualification for benefits, it took two months for his assigned administrator, Rahmaty Fereshteh, to contact him, at which point she told him that his file was empty and she had not received the documentation.  *Id.* ¶¶ 18–20, 22.  Mr. Howell claims that he then faxed the documents to Ms. Fereshteh twice more.  *Id.* ¶¶ 24–25.  When he finally received a second phone call from Ms. Fereshteh, she told him that she was an RSA intern and that her

tenure with the RSA would end that day.  *Id.* ¶ 27.  The complaint alleges that during the period

from late March to late May, Ms. Fereshteh never made an appointment for Mr. Howell or

provided him with any information regarding his legal rights and protections, and that as of the

filing of his complaint with this Court on June 6, 2011, the RSA had not returned any of his

phone calls or taken any administrative action relating to his file.  *Id.* ¶¶ 28, 30.

Although defendants challenge some of those allegations pertaining to the events

occurring between March and July 2012, the parties agree that plaintiff is currently engaged in an

administrative process with the District to obtain funding for the 2011–2012 school year.  Def.'s

Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss ("Def.'s Reply") at 4.  So, what is at issue in this

case is plaintiff's failure to receive funds, benefits, or services during the three years he attended

community college prior to the 2011–2012 school year.  *See* Pl's Resp. to Defs.' Newly Filed Ex.

"A" per Ct. Order [Dkt. # 16] at 4 (stating that "[t]he challenged action here is Defendants'

failure to comply with its RSA obligations to [p]laintiff during his community college years,"

and "[t]he question as to how much the agency pays for the current 2011–2012 academic year

has no relevance or bearing upon the federal issues in this case *sub judice*.  The issues in this

case concern <u>prior</u> years of services, benefits and funding *per-se*.").

The complaint alleges that defendants violated D.C. Code § 7-761.01 *et seq.* (Count I);[1]

29 D.C.M.R. § 100 *et seq.* (Count II); 42 U.S.C. § 1983 (Count V); the Americans with

Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") (Count VI); and Section 504 of the

Rehabilitation Act, 29 U.S.C. § 794 (Count VII); and that they acted negligently (Counts III and

---

1       Count I actually cites D.C. Code section 7-601, which defines the standard for a
determination of death, and section 7-7601, which does not exist.  However, since other parts of
the complaint cite section 7-761.01 *et seq.*, *see, e.g.*, Compl. ¶ 19, which governs the Department
on Disability Services, the Court will construe Count I as arising under that section of the D.C.
Code.

IV).   It also asks the Court to compel the District of Columbia to perform its duty under 28

U.S.C. § 1361 (Count VIII).   Notably, it does not allege that defendants violated the IDEA.   To

remedy these alleged violations, the complaint demands "all funding for college and training,"

"compensation for prior years that defendants have failed to provide funding," and attorney's

fees.   Compl. ¶ 59.

### B. Amended Complaint

The allegations in the amended complaint are substantially similar to those in the original

complaint.   The amended complaint alleges that the District of Columbia did not notify plaintiff

of his eligibility for post-secondary benefits, services, and funding, and that, as a result, he did

not apply and did not receive benefits, services, or funding for community college.[2]   Am. Compl.

¶ 19–20, 22.   The amended complaint further alleges that plaintiff's injuries were the result of the

RSA's policies, which include:

- "Deliberate indifference in failing to train counselors and re-train counselors to follow agency guidelines and protect the constitutional rights of beneficiaries in providing benefits, services and funding for disabled citizens;

- "Deliberate indifference to properly supervise counselors;

- "Deliberate indifference and failure by Defendants to maintain a proper system for the investigation and review of incidents of counselors violating agency duties to disabled citizens."

Am. Compl. ¶ 23.   Finally, the amended complaint alleges the following "systematic flaws in

[d]efendants [sic] review process":

- "Defendants [sic] failure to investigate ineffective, or incompetent counselors who intentionally violate agency duties to citizens;

---

2       The amended complaint also states that plaintiff is currently a student at American University.   Am. Compl. ¶¶ 16, 21.

4

- "Defendants and counselors failed to maintain logs, or records of actions to identify and inform known special needs students of their rights to benefits, services and funding;

- "Information on any efforts to inform known special needs students of their rights to benefits, services and funding is not documented and reviewed for accuracy by supervisors;

- "Defendants frequently permitted conclusions to be drawn on the basis of incorrect or contradictory information."

Am. Compl. ¶ 24.

The amended complaint alleges that plaintiffs violated 42 U.S.C. § 1983 (Count I); the Americans with Disabilities Act, 42 U.S.C. § 12101 (Count II); the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Count III); and 29 D.C.M.R. § 100 *et seq.* (Count IV). It also asks the Court to compel the District of Columbia to perform its duty under 28 U.S.C. § 1361 (Count V). Finally, it demands compensation for all denied past services, benefits, and funding that were due to plaintiff while he attended community college, as well as punitive damages, and attorney's fees.

## II.   Standard of Review

### A.  Motion for Leave to Amend

When a party seeks to amend its pleading after a responsive pleading has been served, the Court should "freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996); *Rumber v. District of Columbia*, 598 F. Supp. 2d 97, 102 (D.D.C. 2009).  When evaluating whether to grant leave to amend, the Court must consider (1) undue delay; (2) prejudice to the opposing party; (3) futility of the amendment; (4) bad faith; and (5) whether the plaintiff has previously amended the complaint. *Atchinson v. District of Columbia*, 73 F.3d 418 (D.C. Cir. 1996), quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Court may deny leave to amend based on futility if the proposed claim would not survive a motion to dismiss. *Rumber*, 598 F. Supp. 2d at 102, citing *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).

### B.  Motion to Dismiss

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  129 S. Ct. at 1949.  And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 1950.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*, quoting *Twombly*, 550 U.S. at 556. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' 'that the pleader is entitled to relief.'"  *Id.*, quoting Fed. R. Civ. P. 8(a)(2).  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  In ruling upon a motion to dismiss, a court may ordinarily consider only "the facts alleged in the complaint, documents

attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).

When considering a motion to dismiss under Rule 12(b)(6), "the complaint is construed liberally in the plaintiff['s] favor, and [the Court should] grant [the] plaintiff[] the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

### III.   Analysis

#### A.  Plaintiff's Motion for Leave to Amend Complaint

The Court first turns to plaintiff's motion for leave to amend, since the Court's ruling on this motion will determine whether it reaches defendants' motion to dismiss the original complaint. And since the crux of the claims in plaintiff's amended complaint concerns whether defendants violated the D.C. municipal regulations governing vocational rehabilitation services, the Court will begin by examining amended Count IV.

##### i.  <u>Plaintiff's Amended Count IV, Alleging Violation of 29 D.C.M.R. § 100 *et seq.* Is Futile.</u>

The RSA receives federal funding to provide authorized vocational rehabilitation services pursuant to the Rehabilitation Act, 29 U.S.C. § 713(a). *Takahashi v. D.C. Dept. of Human Servs.*, 952 A.2d 869, 874–75 (D.C. 2009). Individuals apply for vocational rehabilitation services by contacting the RSA directly or upon referral. 29 D.C.M.R. § 101.1. To apply, the individual must request services from the RSA (*e.g.*, by submitting an application), provide to

the RSA the information necessary to initiate an assessment to determine eligibility for services, and be available to complete the assessment process.  29 D.C.M.R. § 101.7.  The RSA then works with all individuals determined to be eligible for vocational rehabilitation services to develop and implement an Individualized Plan for Employment ("IPE").  29 D.C.M.R. § 110.1. The RSA will fund some or all of a student's post-secondary educational expenses when they are specified in the student's IPE, the student obtains prior written approval from the RSA for any costs that the student expects the RSA to assume, and the student meets certain other conditions. 29 D.C.M.R. § 122.  The regulation specifies that:  "The Rehabilitation Services Administration shall not be responsible for the payment of any post-secondary educational or training costs that the individual may incur before receiving the Rehabilitation Services Administration's written commitment to fund the costs at the post-secondary educational or training institution."  29 D.C.M.R. § 122.11.

Plaintiff's filings are short on explanation of the basis for his claims, but giving plaintiff the benefit of all inferences in his favor, the Court will assume that he is making two arguments: 1) that D.C. had a duty to inform him of his eligibility for available funds for post-secondary education, which it failed to satisfy, and 2) that D.C. failed to provide him with funds for his post-secondary education to which he was entitled.

As a preliminary matter, the Court has doubts about whether plaintiff may bring this claim in this Court without first going through the administrative procedure outlined in the Municipal Regulations.  *See* 29 D.C.M.R. §§ 135–69 (administrative procedure for appeal of RSA decisions).  The Code provides that "an applicant or consumer of the Vocational Rehabilitation Services Division . . . who is dissatisfied with any determination concerning the furnishing or denial of vocational rehabilitation services," *id.* § 135.2, must utilize the

administrative appeal process before bringing suit in United States District Court.   *See id.* §§ 135–69.   Since plaintiff does not allege that he ever requested reimbursement and obtained a final determination on his request from the RSA, or that he appealed the determination within the administrative appeals framework, this Court has doubts about whether plaintiff could survive a motion to dismiss for failure to exhaust administrative remedies under Fed. R. Civ. P. 12(b)(6).[3]   *See Nelson v. District of Columbia*, 772 A.2d 1154, 1156 (D.C. 2001), citing *Gilmore v. Bd. of Trs. of the Univ. of D.C.*, 695 A.2d 1164, 1166 (D.C. 1997) (dismissing claims under District of Columbia law for failure to exhaust administrative remedies).

However, even if this Court assumes plaintiff could show that he exhausted his administrative remedies, his claim under 29 D.C.M.R. § 100 *et seq.* is futile.   First, these regulations do not confer a duty upon the RSA to inform students that they may be eligible for post-secondary education funding.   *Takahashi*, 952 A.2d at 873, 876.   D.C. Public Schools ("DCPS") is responsible for referring eligible students to the RSA pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*   DCPS's failure to identify and inform Mr. Howell of transition benefits might constitute a violation by DCPS of the IDEA,[4]

---

3       Defendants argue that failure to exhaust administrative remedies is a jurisdictional deficiency.   Mem. in Supp. of Def.'s Mot. to Dismiss, or in the alternative, Mot. for Summ. J. ("Def.'s MTD") at 7.   In support, they cite *Ali v. Rumsfeld*, 649 F.3d 762 (D.C. Cir. 2011) (cited in brief as *Mohammed v. Rumsfeld*, 2011 WL 2462851).   But *Ali* stood only for the proposition that *under the Alien Tort Statute*, failure to exhaust administrative remedies is jurisdictional.   *Id.* at 775.   Contrarily, the cases in this jurisdiction treat failure to exhaust as a failure to state a claim under Fed. R. Civ. P. 12(b)(6).   *See McKeithan v. Boarman*, 803 F. Supp. 2d 63, 69 n.4 (D.D.C. 2011), citing *Kilby-Robb v. Spellings*, 309 Fed. Appx. 422, 423 n.1 (D.C. Cir. 2009) ("Although there has been some confusion in this jurisdiction regarding whether a failure to exhaust administrative remedies is properly brought in a Rule 12(b)(1) motion, as a jurisdictional defect, or in a Rule 12(b)(6) motion for failure to state a claim, recent cases favor treating failure to exhaust as a failure to state a claim."   Internal quotation marks omitted.)

4       As this issue is not before the Court, the Court takes no position on whether such a claim would succeed in this case.

but it does not constitute a violation by the RSA of the D.C. municipal regulations which govern the RSA's role in implementing the Rehabilitation Act.  *See Takahashi*, 952 A.2d at 873 n.2, 876.

Furthermore, even if plaintiff had been duly notified, defendants had no obligation to provide post-secondary educational funds, benefits, or services to him.  The RSA is not required to fund a post-secondary education program when the student applies and is accepted to the education program before applying to and receiving approval for services from the RSA.  *Id.* at 875.  In contrast to the IDEA, which is an entitlement program, there is no entitlement to receive RSA benefits.  *Id.* at 873, citing 29 U.S.C. § 722(a)(3)(B) (2007); 34 C.F.R. § 361.42(a)(5) (2007); *see also* 29 D.C.M.R. § 122.11.

Therefore, plaintiff's proposed amended Count IV is futile.

   ii.   Plaintiff's Amended Count I, Alleging Violation of the Civil Rights Act (42 U.S.C. § 1983) Is Futile.

Plaintiff next claims that defendants violated 42 U.S.C. § 1983 ("section 1983") by intentionally depriving plaintiff of past benefits, services, and funds.

The Civil Rights Act of 1983 provides a cause of action against a municipality if the "plaintiff [can] allege that the defendant [municipality] committed an unconstitutional act that 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'"  *Dave v. District of Columbia*, 08-0856, 2011 WL 4014296 at *6 (D.D.C. Sept. 12, 2011), citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978).  The District of Columbia is a "person" for purposes of section 1983.  *Best v. District of Columbia*, 743 F. Supp. 44, 46 (D.D.C. 1990), citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 (1978).

D.C. may be subject to liability under section 1983 only "when an official policy or custom causes the complainant to suffer a deprivation of a constitutional right." *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986).  The "policy or custom itself must be 'the moving force of the constitutional violation.'" *Id.* (quoting *Monell*, 436 U.S. at 694); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) (requiring "affirmative link" between the city's policy and alleged constitutional violation).  To hold D.C. liable under section 1983, a "[plaintiff] must show 'not only a violation of his rights under the Constitution or federal law, but also that the District's custom or policy caused the violation.'" *Feirson v. District of Columbia*, 506 F.3d 1063, 1066 (D.C. Cir. 2007), quoting *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004).

Although it is difficult to determine what right plaintiff thinks D.C. has deprived him of, the Court will construe his claim as alleging that D.C. deprived him of his right to obtain funds, benefits, and services to which he was entitled.  The problem with this claim is that, as described above, plaintiff was not entitled to any funds, benefits, or services for his post-secondary education.  So, even if D.C. deprived plaintiff of post-secondary educational funding, it did not deprive him of a right under the Constitution or federal law.

Even if the Court construes the claim as alleging that plaintiff had a right under federal law to be informed of his eligibility for funding at the time of his transition from secondary school to community college, the claim would fail.  The Court has already established that any such right, if it exists, could only have arisen under the IDEA.

A recent opinion by another court in this District has held that a plaintiff is not entitled to bring suit under section 1983 to enforce the IDEA.  *DL v. District of Columbia*, 730 F. Supp. 2d 84, 89 (D.D.C. 2010).  That court based its decision on the Supreme Court's holding in *Rancho*

11

*Palos Verdes v. Abrams*, 544 U.S. 113 (2005), that a plaintiff may not sue under section 1983 when there is in place a statutory "comprehensive enforcement scheme that is incompatible with individual enforcement under [section] 1983." *Id.* at 120. The district court noted that there is a circuit split on the issue of whether the IDEA constitutes a comprehensive enforcement scheme that is incompatible with individual enforcement under section 1983, with the majority of circuits (First, Third, and Ninth) finding that it does, and the minority (Second) finding that it does not. *DL*, 730 F. Supp. 2d at 89–90. The D.C. Circuit has not yet decided this issue. *Id*, citing *Blackman v. District of Columbia*, 456 F.3d 167, 172 n.6 (D.C. Cir. 2006). This Court agrees with the district court and the majority of circuits that have found that plaintiffs may not bring suit under section 1983 to enforce the IDEA. The IDEA creates a comprehensive enforcement scheme which is incompatible with individual enforcement under section 1983.[5] *See* 20 U.S.C.

---

5       Even if plaintiff could establish the first prong of a section 1983 claim – a violation of a constitutional right – he has not alleged sufficient facts to establish the predicate for municipal, as opposed to individual liability. That is, he has not alleged that the violation was caused by official custom and practice. "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). This requirement flows directly from the statute itself. "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton v. Harris*, 489 U.S. 378, 390–91 (1989). Rather, the plaintiff must allege that the failure to train "amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact." *Id.* at 388. According to *Baker v. District of Columbia*, 326 F.3d 1302 (D.C. Cir. 2003), deliberate indifference is measured by an objective standard: whether the municipality knew or should have known of the risk of constitutional violations. *Id.* at 1307. And, even in a section 1983 case, under *Iqbal*, "conclusory pleadings are no longer sufficient to state a claim on which relief may be granted." *Smith v. District of Columbia*, 674 F. Supp. 2d 209, 214 n.2 (D.D.C. 2009). Applying this post-*Twombly* approach, plaintiff's section 1983 claim fails here because its allegations – that the District showed deliberate indifference in failing to train, supervise, investigate and review counselors – simply recite conclusory allegations of custom or policy and fail to explain with any specificity or alleged factual basis how those policies are deficient, how they caused harm to plaintiff, or why the municipality knew or should have known of the risk of constitutional violations. Indeed, the complaint itself seems to suggest that DCPS followed a practice of

§§ 1415(b)(6)(A), (f)(1)(A), (i)(2)(A); *see also DL*, 730 F. Supp. 2d at 89–90.   As such, plaintiff's claim under section 1983 is futile.

     iii.   Plaintiff's Amended Count II and III, Alleging Violations of the ADA (42 U.S.C. § 12101 *et seq.*) and the Rehabilitation Act (29 U.S.C. § 794) Are Futile.

     The amended complaint also alleges violations of the ADA and 29 U.S.C. section 794 – a provision under section 504 of the Rehabilitation Act.   The relevant provision of the ADA provides that:   "[N]o qualified individual with a disability shall, *by reason of such disability*, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."   42 U.S.C. § 12132 (emphasis added).   The provision under Section 504 of the Rehabilitation Act that plaintiff invokes provides that:   "No otherwise qualified individual with a disability in the United States . . . shall, *solely by reason of her or his disability*, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794 (emphasis added).   A *prima facie* claim under either the ADA or the Rehabilitation Act, which are identical for the purposes of this case, must show:   "(1) that [plaintiff] is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs, or activities, or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability."   *Hargrave v. Vermont*, 340 F.3d 27, 34–35 (2d Cir. 2003).   To make the third showing, plaintiff "must establish that the disability 'actually played a role in the decision making process and had a determinative influence on the outcome.'"   *Jackson v. District of Columbia*, No. 09-00839, 2011 WL 5925305, at *3 (D.D.C. Nov. 28, 2011).

---

notifying at least some students of the opportunity to apply for continued benefits after high school.

Plaintiff's amended complaint does not allege that he was entitled to any benefits, services or funds, let alone that he was excluded from benefits, services, or funds on the basis of his disability.[6] Therefore, his amended ADA and Rehabilitation Act claims (Counts II and III) are futile.

      iv.  <u>Plaintiff's Amended Count V, Requesting that the Court Compel Defendants to Compensate Plaintiff Under 28 U.S.C. § 1361 Is Futile.</u>

Finally, plaintiff demands that the Court compel defendants to compensate plaintiff for denied benefits pursuant to 28 U.S.C. § 1361. Am. Compl. ¶ 44. The extraordinary remedy of a writ of mandamus is available "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Defendants argue that this claim fails because plaintiff fails to identify any duty that defendants should be compelled to perform. Def.'s MTD at 7. The Court agrees. Furthermore, the Court notes that a writ of mandamus under this section confers authority on this Court to compel only action by an officer or employee of the United States or a federal agency; not by the District of Columbia or non-federal officials. *See Johnson v. Chau*, No. 08-154, 2008 WL 250595, at *1 (D.D.C. Jan. 25, 2008).

For the reasons stated above, the Court finds that plaintiff's amendments to his complaint are futile and will deny his leave for motion to amend without prejudice to a future claim under

---

6      Courts will find a violation of section 504 of the Rehabilitation Act in IDEA cases where the plaintiff shows that either "bad faith or gross misjudgment" led to the District's failure to provide a free and appropriate public education to an individual with a disability. *DL*, 730 F. Supp. 2d 84, 99 (D.D.C. 2010), quoting *Walker v. District of Columbia*, 157 F. Supp. 2d 11, 35 (D.D.C. 2001). However, since post-secondary education is not an entitlement like elementary or secondary school, the Court declines to extend this precedent to the post-secondary context. *See* 34 C.F.R. § 104.33(a) (implementing regulation for section 504 that states: "A recipient that operates a *public elementary or secondary education program* or activity shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." Emphasis added.).

the IDEA or the relevant D.C. municipal regulations once plaintiff has exhausted his administrative remedies.

### B.  Defendants' Motion to Dismiss Plaintiff's Original Complaint

Since the Court finds that plaintiff's proposed amendments to his complaint are futile, it turns to defendants' pending motion to dismiss plaintiff's original complaint.  The Court begins with defendants' argument that plaintiff fails to state a claim under Fed. R. Civ. P. 12(b)(6).

#### i.   Counts II, V, VI, VII, and VIII Fail to State a Claim.

Since Counts II, V, VI, VII, and VIII in the original complaint are substantively the same as the counts in the proposed amended complaint, the Court will dismiss them for failure to state a claim for the reasons stated above.[7]

#### ii.   Count I, Alleging Violation of  D.C. Code § 7-761.01 *et seq.*, Fails to State a Claim.

In their motion to dismiss, defendants correctly point out that separate paragraphs of the complaint identify the cause of action in Count I as arising under D.C. Code section 7-601 and section 7-7601 respectively.  Def.'s MTD at 8.  They also correctly note that section 7-601 recites the standard for a determination of death, and section 7-7601 does not exist.  *Id.* Obviously, neither of these sections is relevant to the instant case.  In an effort to accord the plaintiff the benefit of any doubt, the Court posits that Count I may have been intended to allege a violation of the Department on Disability Services Establishment Act of 2006, D.C. Code § 7-761.01 *et seq.*[8]  But even if that is correct, the Count still fails to state a claim.  No provision of that Act confers a duty on defendants to provide plaintiff with the information or resources he

---

[7]     Actually, the section 1983 claim in the original complaint is even weaker than the claim in the amended complaint because the original complaint contains no allegation that plaintiff's deprivation of rights was caused by a policy, pattern, or practice of the District.

[8]     The Court notes that plaintiff does cite section 7-761.01 *et seq.* in other parts of his complaint, even though he fails to cite it under Count I.  *See, e.g.*, Compl. ¶ 19.

claims he was denied.  Moreover, since plaintiff has failed to address the motion to dismiss Count I specifically in his opposition, the Court can conclude that the motion as to Count I is conceded.

iii.   Counts III and IV, Alleging Negligence, Fail to State a Claim

Plaintiff also alleges that the RSA acted negligently by failing to identify and inform plaintiff of his right to funding and services (Count III) and by failing to provide information so that plaintiff could understand his legal rights and protections, and to maintain an easy-to-understand intake and eligibility process (Count IV).

To prove negligence, plaintiff must allege:  1) defendants owed plaintiff a duty, 2) defendants breached that duty, and 3) the breach resulted in an injury.  *Trifax Corp. v. District of Columbia*, 53 F. Supp. 2d 20, 29 (D.D.C. 1999).  The District has no general duty to provide public services to an individual citizen, so to satisfy the first prong of a negligence allegation, plaintiff must allege that the District "owed a special duty to the injured party, greater than or different from any duty which it owed the general public."  *Snowder v. District of Columbia*, 949 A.2d 590, 603 (D.C. 2008).  A special duty requires a showing of: 1) "direct or continuing contact between the victim and the governmental agency, along with justifiable reliance by the victim," or 2) "a statute prescribing mandatory acts for the protection of a particular class of persons rather than the public."  *Id.* at 603–04 (citations omitted).  Defendants argue that plaintiff has failed to properly allege that a special duty existed between plaintiff and defendants in this case.  Def.'s MTD at 9–10.  The Court agrees.

Count III alleges that the RSA had an obligation to identify and inform plaintiff of his right to funding and services for post-secondary education.  Compl. ¶¶ 38–40.  But as described above, the RSA had no statutory duty to identify or inform plaintiff.  And plaintiff does not

allege any direct or continuing contact between himself and the RSA, let alone justifiable reliance on his part. As such, he fails to allege that defendants owed him a special duty to identify and inform him.

Count IV alleges that the RSA had an obligation "to provide information so that the individuals understand their legal rights and protections, and to maintain an easy-to-understand intake and eligibility process." Compl. ¶ 44. As proof, plaintiff points to language on the RSA's website. Ex. 5 to Compl. But a website does not create a statutory duty. Therefore, since plaintiff has not alleged direct or continuing contact with the RSA that would lead to his justifiable reliance, he fails to allege that defendants owed him a special duty here, as well.[9]

As such, the Court will dismiss Counts III and IV for failure to state a claim.

Since the Court finds that each of the Counts in the original complaint fails to state a claim, it will dismiss the complaint in full. The Court need not reach defendants' other arguments for dismissal.

---

[9] Even if the District had a special duty to provide information so that individuals understand their legal rights and protections and to maintain an easy-to-understand administrative system, the Court would lack subject matter jurisdiction over a negligence claim alleging a violation of that duty because the District has not waived sovereign immunity. *See Martin v. Wash. Metro. Area Transit Auth.*, 273 F. Supp. 2d 114, 118 n.2 (D.D.C. 2003) (the court may consider a sovereign immunity defense *sua sponte*). "'[T]he District is immune from suit in tort if the act complained of was committed in the exercise of a discretionary function.'" *D.C. Hous. Auth. v. Pinkney*, 970 A.2d 854, 859–60 (D.C. 2009), quoting *District of Columbia v. Pace*, 498 A.2d 226, 228 (D.C. 1985). Choosing what information to provide so that individuals may "understand their legal rights and protections" and deciding when an administrative system is "easy-to-understand" are both discretionary functions because they require government officials to make decisions based on subjective criteria. *See, e.g.*, *Nealon v. District of Columbia*, 669 A.2d 685, 690 (D.C. 1995) ("Discretionary acts have also been defined as acts that require personal deliberation, decision and judgment." Internal quotation marks omitted.).

**IV.     Conclusion**

For the reasons stated above, the Court finds that plaintiff's proposed amendments to his complaint are futile and will deny the motion for leave to amend without prejudice to plaintiff filing a future claim under the IDEA or the relevant D.C. municipal regulations once he has exhausted his administrative remedies.

The Court will also dismiss plaintiff's original complaint in full without prejudice for failure to state a claim.  A separate order will issue.


AMY BERMAN JACKSON
United States District Judge


DATE: February 14, 2012